UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIDNEY BELL, JR.

      Plaintiff,                               Civil Action No.  18-12411

v.                                     HON.  PAUL D. BORMAN
                                          U.S. District Judge
                                          HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Sidney Bell, Jr. ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #18] be DENIED and that Defendant's Motion for Summary Judgment [Dock. #20] be GRANTED.

-1-

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on January 22, 2016,  alleging disability as of January 5, 2016 (Tr. 170).  After the initial denial of benefits, Plaintiff requested an administrative hearing, held on September 20, 2017 in Detroit, Michigan (Tr. 34).  Administrative Law Judge ("ALJ") Latanya White Richards presided.  Plaintiff, represented by non-attorney representative Stanley Smith, testified (Tr. 41-62), as did Vocational Expert ("VE") Stephanie Leech (Tr. 62-66).  On February 27, 2018, ALJ Richards found Plaintiff not disabled (Tr. 15-29).  On June 5, 2018, the Appeals Council declined to review the administrative opinion (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on August 3, 2018.

## II.  BACKGROUND FACTS

Plaintiff, born April 30, 1974, was 43 at the time of the ALJ's decision (Tr. 29, 170).  His application states that he completed 12th grade and worked as a home health aide and material handler (Tr. 150-151).  His application alleges disability due to a mental condition, a back condition, and hypertension (Tr. 191).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived in Detroit, Michigan with his mother and wife (Tr. 41).  He performed home healthcare work for his mother (Tr. 41).  He had been performing the work for the past four years (Tr. 43).  He worked 29.9 hours a week and made approximately $298 a month (Tr.

41).  His job responsibilities included housekeeping, shopping, and laundry which he was able to perform independently (Tr. 41).  He did not have a driver's license but was able to use public transportation by himself (Tr. 42).  He took the bus three or four times a week and was sometimes accompanied by his wife (Tr. 42).  He stood 6' 4" and weighed 343 pounds (Tr. 42).  He was right-handed (Tr. 42).

In 2013, he performed some temporary warehouse work (Tr. 44).  He did not recall the nature of the temporary work he performed between 2007 and 2011 (Tr. 45).  His temporary jobs did not last more than six months (Tr. 45).  He was unable to work due to back pain and anger management problems (Tr. 46).  He treated the back problems with steroid injections (Tr. 46).  He experienced good results from the injections (Tr. 47).  He took Norco for the back condition but did not experience medication side effects (Tr. 47).  His typical level of back pain (without medication) was a "nine" on a scale of one to ten and a "one" to "two" with medication (Tr. 47).  Surgery had not been recommended (Tr. 48).  He had been prescribed a cane and used it when leaving home (Tr. 48).

Plaintiff had not received anger management treatment in the five years before the hearing (Tr. 49).  He was thinking about getting back into treatment because he felt that recently, his condition was becoming "a little out of control" (Tr. 49).  He did not take psychotropic medication (Tr. 50).  He sustained injuries to the cartilage in his knees within the year before the hearing (Tr. 50).  Following a cardiac stress test, Plaintiff's physician told him to "keep an eye on [the condition]" (Tr. 50).  He took medication for hypertension (Tr.

51).  He experienced dizziness and headaches three to five times a week (Tr. 49).

Plaintiff was able to stand for up to three hours, walk for two blocks, and lift 15 pounds (Tr. 51).  His work on behalf of his mother included housekeeping, laundry, shopping, washing dishes, and helping his mother out of the bathtub and dressing (Tr. 52).  He was able to perform his job activities when his back wasn't hurting (Tr. 52).  His non-work activities included taking a bus to the mall, interacting with friends, and going to the movies (Tr. 52).  He watched television but did not read books, newspapers, or magazines regularly (Tr. 52).  He was able to access social media on his smart phone (Tr. 53).

In response to questioning by his representative, Plaintiff reported that he saw an orthopedic doctor for his knees but not his back (Tr. 53).  His headaches typically lasted up to three hours (Tr. 53).  He coped with the headaches by reclining (Tr. 53).  He experienced periodic dizziness (Tr. 54).  He coped with the dizziness by reclining (Tr. 54).  He opined that his inability to find steady work was due to his inability to stand and to his "attitude," but added that he did not believe that he had lost jobs because of his attitude (Tr. 57).  He disliked having other "breathing  down [his] neck" and became angry as a result (Tr. 57).  He became "really angry" three to four times a week for up to three hours (Tr. 58).  He coped with his anger by sitting and listening to music (Tr. 58).

He received monthly checks for his work on his mother's behalf (Tr. 58).  He cashed the checks at the bank (Tr. 62).  He received a W-2 for the earnings every year (Tr. 59).  Plaintiff did most of the cooking at his house (Tr. 60).  His wife had helped him complete

his application for DIB (Tr. 63).

    **B.**    **Medical Evidence**

        **1. Treating Sources**

April, 1988 school records note that Plaintiff, just short of his 14th birthday, was eligible for Individualized Education Program ("IEP") for an emotional impairment (Tr. 227-228). Intelligence testing was in the low borderline range (Tr. 230, 233). Plaintiff was noted to be "very restless," "disobedient," and was know to have stolen from other members of his family (Tr. 232). Plaintiff was "friendly" and "polite" at the time of the IEP evaluation (Tr. 232). His academic level was between "upper" third grade and the 5.5 grade level (Tr. 233).

In August, 2015, Plaintiff reported back pain and stiffness (Tr. 543). He demonstrated full strength in all muscle groups and full grip strength (Tr. 544). Plaintiff's compliance with treatment was deemed "fair" (Tr. 543). He reported good results from therapeutic exercise (Tr. 545). November, 2015 treating records note a history of hypertension but a wholly normal physical examination (Tr. 237, 352). The following month, Plaintiff received emergency treatment for chronic low back pain (Tr. 243). He was discharged in stable condition after receiving a prescription for Norco (Tr. 243). He denied neurological symptoms and exhibited normal mood, affect, judgment and thought content (Tr. 245-246).

January, 2016 examination records note a normal range of motion and muscle tone (Tr. 255). Plaintiff exhibited a normal mood, affect, speech, judgment, thought content, cognition, and memory (Tr. 255, 340). The same month, Plaintiff commenced pain

management treatment (Tr. 767).  An x-ray of the cervical spine from the following month showed cervical spondylosis (Tr. 263, 764).  Plaintiff denied  problems walking, standing, or sitting (Tr. 529).  He also denied balance problems (Tr. 529).  A lumbar injection was performed without complications (Tr. 766).  In March, 2016, Plaintiff denied memory loss, pain, depression, or dizziness (Tr. 351).  He underwent another injection (Tr. 728, 735).  A May, 2016 CT of the chest was negative for arterial embolism (Tr. 314).  Records from the same month note that Plaintiff was fully oriented and alert with a normal mood, affect, behavior, speech, judgment, memory, and thought content (Tr. 313).  He displayed normal strength (Tr. 313, 349).  July, 2016 pain management records note a prescription for Norco (Tr. 770).

August, 2016 imaging studies of the bilateral knees showed minimal spurring and no joint effusion (Tr. 287).  Records from the same month and September, 2016 note a diagnosis of severe sleep apnea (Tr. 572, 575).  Plaintiff was advised to use a CPAP and lose weight (Tr. 572).   The same month, he exhibited full muscle strength and good coordination (Tr. 419).  Plaintiff appeared well groomed and cooperative (Tr. 418).  He received cervical spine injections (Tr. 637-663).  An echocardiogram from the following month showed grade I diastolic dysfunction (Tr. 401).  In November, 2016, Plaintiff again sought treatment for non-radiating back pain (Tr. 280).  Emergency treating records note a normal neurological examination and a full range of motion (Tr. 282, 399).

In January, 2017, Plaintiff reported bilateral knee pain (Tr. 396).   Injections were administered without complications between January and September, 2017 (Tr. 577-631). In February, 2017, Plaintiff denied back pain, gait problems, neck pain, or neck stiffness (Tr. 369).   The following month, Plaintiff reported that he seldom took naps (Tr. 364).   He reported dizziness and back pain (Tr. 364-365).   Plaintiff exhibited good insight and judgment and was cooperative, alert, and oriented (Tr. 365).   He exhibited normal muscle strength (Tr. 366).   In April, 2017, Plaintiff reported continued knee pain (Tr. 389).   He underwent bilateral arthroscopic surgery of the knees in June, 2017 (Tr. 360).   Post-surgical records note full orientation, good coordination, and a full range of motion (Tr. 361).   July, 2017 records note "only some weakness" of the left knee (Tr. 381).

## 2.  Consultative and Non-Examining Sources

In May, 2016, Tariq Mahmoud, M.D. performed a non-examining review of the medical records on behalf of the SSA, finding that Plaintiff's medical conditions did not create significant work-related limitations (Tr. 78).

In June, 2016, Rowhak Hasan, M.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of mood swings, anger, and a history of getting in fights (Tr. 265).   Plaintiff denied suicidal or homicidal ideation (Tr. 265).   He also denied hallucinations or  psychiatric hospitalizations (Tr. 265). He denied receiving psychological treatment or legal problems (Tr. 265).   Dr. Hasan observed a slow gait and short-term memory problems (Tr. 266).   Plaintiff reported that he was able to take

care of his basic needs (Tr. 266).  He exhibited contact with reality and normal motor activity with a spontaneous and logical stream of mental activity (Tr. 266).  He showed good immediate and past memory (Tr. 266).  Dr. Hasan noted that despite "some cognitive deficiency," Plaintiff was "able to understand and follow simple instructions" (Tr. 266).

In July, 2016, Kathy A. Morrow, Ph.D. reviewed the treating records on behalf of the SSA, finding that due to organic and personality disorders, Plaintiff experienced mild limitation in activities of daily living and social functioning, and moderate difficulty in concentration, persistence, or pace (Tr. 79).  She noted that "no psych problems" were observed during Dr. Hasan's consultative examination (Tr. 82).

In September, 2017 Leonard McCulloch, M.A. performed a psychological examination and intelligence testing, noting Plaintiff's report of occasional headaches (Tr. 780).  Plaintiff denied a history of mental health treatment and denied hurting people but acknowledged that he verbally abused others around three or four times a week (Tr. 780-781).  He reported that he was slow in learning new things (Tr. 781).  He was able to sit for around 60 minutes before exhibited pain behavior (Tr. 781).  He did not exhibit pain while walking (Tr. 781).  A Wechsler Adult Intelligence Scale-IV Edition ("WAIS-IV") showed a full scale IQ of 55 (Tr. 782).  McCulloch opined that "[i]t is difficult to see how any serious employer would hire him" (Tr. 783).  McCulloch also noted "marked impairments in concentration, persistence, and pace and "autonomy and self-management" (Tr. 783).  McCulloch opined that if benefit funds were awarded Plaintiff "would need a payee" (Tr.

783).  Psychologist Lois P. Brooks, Ed.D. also signed the report (Tr. 783).

### C.   Vocational Expert Testimony

The ALJ posed the following set of limitations to VE Leech, describing a hypothetical individual of Plaintiff's age, education, and lack of work background:

> [A]ssume [the] individual is limited to light work as defined by the regulations.[1] They can occasionally climb ramps and stairs but cannot climb ladders or scaffolds.  They cannot kneel or crawl.  They can occasionally stoop and crouch.  They must avoid use of hazardous machinery and exposure to unprotected heights and avoid balancing on narrow, slippery, or moving surfaces.  Would there be any work for that individual? (Tr. 65).

The VE responded that the hypothetical individual could perform the light, unskilled job of a bench assembler (50,000 positions in the national economy); packer (200,000); and inspector (100,000) (Tr. 65).  The VE testified that if the same individual were further limited to "simple routine tasks but not at a production rate pace;" "simple work related decisions;" only "occasional changes in the routine work setting;" and "only occasional interaction with coworkers, supervisors, and the general public," the job numbers would be reduced to the following numbers: bench assembler (25,000); packer (75,000); and inspector (50,000) (Tr. 66).

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The VE stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for the testimony regarding "proximity to others" and "production pace" which was based on her own professional experience (Tr. 66).

### D.  The ALJ's Decision

Citing the medical records and other evidence, ALJ Richards found that Plaintiff experienced the severe impairments of "cervical and lumbar spondylosis, obesity, osteoarthritis of the bilateral knees, impulsive control disorder, intermittent explosive disorder, and intellectual disorder" but that none of the conditions met or medically equaled impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-19).  The ALJ found that the conditions of hypertension, gastritis, obstructive sleep apnea, and grade I diastolic dysfunction were non-severe (Tr. 18).  She found that Plaintiff experienced mild limitation in understanding, remembering, or applying information and moderate limitation in interacting with others; concentration, persistence, or pace; or adapting or managing himself (Tr. 19-20).  The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for a limited range of light work with the following additional limitations:

> [O]ccasional climbing of ramps and stairs; no climbing of ladders or scaffolds; no kneeling or crawling; occasional stooping and crouching; no use of hazardous machinery or exposure to unprotected heights; no balancing on narrow, slippery, or moving surfaces; is limited to simple, routine tasks but not at a production-rate pace (such as assembly line); can make simple, work-related decisions and adapt to occasional changes in a routine work setting; and occasional interaction with coworkers, supervisors, and the general public (Tr. 21-22).

Citing the VE's findings, the ALJ found that Plaintiff could work as bench assembler, packer, and inspector (Tr. 28, 65-66).

The ALJ discounted Plaintiff's allegations of limitation, citing May, 2016 records showing full strength in all extremities (Tr. 23). She noted that the cervical and lumbar spine pain was non-radicular (Tr. 23). She noted good results from May, 2017 bilateral knee surgery (Tr. 23-24). The ALJ accorded "great weight" to Dr. Hasan's consultative opinion that Plaintiff could understand and follow simple instructions, noting that the opinion was consistent with Plaintiff's significant range of regular activities (Tr. 25). She accorded "lesser weight" to Dr. Hasan's opinion that Plaintiff had anger problems and problems interacting with others but nonetheless noted that the RFC limited Plaintiff to only occasional interaction with coworkers, supervisors, and the public "to compensate" for the alleged anger issues (Tr. 25). She accorded "little weight" to McCulloch's opinion that Plaintiff was unemployable and met Listing 12.05(B) due to a full scale IQ of below 70 and "marked" limitations in self management (Tr. 25). She noted that McCulloch's opinion that Plaintiff was not employable was "not a functional limitation" and that McCulloch was not a vocational expert (Tr. 25).

### III. STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation

altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).   The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).   However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  Intellectual Disability (Arguments One and Two)

In his first argument for remand, Plaintiff contends that he is entitled to a finding of disability at Step Three of the sequential analysis due to an intellectual disability.  *Plaintiff's Brief,* 13-15, *Docket # 18,* Pg ID 867.  On a related note, Plaintiff argues second that the  ALJ erred by dismissing McCulloch's finding that Plaintiff would be entitled to disability at Step

Three of the administrative analysis .  *Id.* at 15-19.

At Step Three, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [] and entitled to benefits." *Reynolds v. Commissioner of Social Sec.,* 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).   A claimant bears the burden of establishing that he meets or equals a listed impairment.  *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987).   An impairment meets the listing only when all of the medical criteria for the impairment are satisfied. 20 C.F.R. § 404.1525(d).

Specifically, Plaintiff argues that he meets part "B" of  Listing 12.05 (Intellectual Disorder) which requires "1. Significantly subaverage general intellectual functioning" shown by "(a)  full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence" along with "(2)  Significant deficits in adaptive functioning" shown by "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

a.  Understand, remember, or apply information; or

b. Interact with others; or

c. Concentrate, persist, or maintain pace; or

d. Adapt or manage oneself (see 12.00E4);  and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

Plaintiff points out that McCulloch's September, 2017 finding of a full scale IQ of 55 satisfies 12.05B(1)(a).   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.   He argues that McCulloch's finding of some cognitive deficiency, problems with concentration, and history of impulsive control disorder and intermittent explosive disorder establish that he meets the second and third requirements of the Listing (266-267, 782-783).   Plaintiff is correct that McCulloch's finding of a full scale IQ of 55, coupled with "marked" impairment in concentration and "autonomy and self management" (adapting and managing oneself), if adopted, would point to a disability finding at Step Three of the administrative sequence.

However, the ALJ's finding that Plaintiff did not meet the 12.05B(1)(a) is well supported and explained.   Without more, the ALJ's finding of no marked or extreme functional limitations defeats Plaintiff's claim that he meets all of the requirements of the Listing.   In support of the ALJ's finding of only mild limitation in understanding, remembering, or applying information, she cited an SSA Field Office report noting no problems in understanding or coherency (Tr. 19).   She also cited Dr. Hasan's finding of adequate contact with reality, full orientation, and "intact general fund of information" in support of the mild finding (Tr. 19-20, 266).   The ALJ noted moderate limitations in interacting with others, noting that while Plaintiff reported not getting along well with others,

-15-

he lived with his wife and mother, took the bus regularly, and spent time at the mall with friends (Tr. 20).   In concentration, persistence, and pace, the ALJ noted that Plaintiff exhibited "difficulties with calculations and abstract thinking" but was in contact with reality with a good thought process,   was able to name four past presidents, and had "intact general fund of information" (Tr. 20).   She found moderate limitation in adaptation, noting reports of only fair or marginal hygiene, but that Plaintiff made a timely appearance for his consultative examinations (Tr. 20).   The ALJ set forth the requirements of Listing 12.05B, noting explicitly that because Plaintiff did not have two marked or one extreme psychological limitation, he did not meet the listing (Tr. 21).   My own review of the  treating records shows that Plaintiff consistently exhibited normal concentration, a cooperative attitude, and normal mood, affect, and judgment (Tr. 245-246, 255, 313, 340, 365, 418).   Substantial evidence supports the ALJ's finding that he did not meet Listing 12.05B.

Further, the ALJ acknowledged and discussed McCulloch's finding of a full scale IQ of 55 and his opinion that Plaintiff experienced marked limitation in concentration and adaptation (Tr. 25 *citing* 783).   She accorded "little weight" on the following basis:

> Mr. McCulloch does not provide support for his finding of 'marked' impairments in concentration, persistence, and pace along with autonomy and self-management [].   These statements conflict with [Dr. Hasan's] consultative mental status examination findings of timely presentation, adequate contact with reality, some motivation and insight, orientation x 3, repeat or 4/4 digits forward and 3/4 backward, recall of 1/3 object after three minutes, recall of four former presidents, intact general fund of information, and adequate judgement (Tr. 25).

The ALJ noted that McCulloch's finding of marked limitation in adaptive skills was

-16-

"inconsistent" with Plaintiff's ability to perform housekeeping chores for his mother for the past three years (Tr. 25).

Plaintiff's related argument that the ALJ adopted only the favorable portions of Dr. Hasan's consultative findings is not well taken. *Plaintiff's Brief* at 15-18. The ALJ acknowledged that Dr. Hasan's summary included Plaintiff's self-report of mood swings, anger management problems, and Dr. Hasan's finding of "problems with concentration" (Tr. 24). However in contrast, she noted that Plaintiff also denied legal problems, was in contact with reality, and showed good immediate and past memory (Tr. 25). She cited Dr. Hasan's conclusion that Plaintiff could "understand and follow simple instructions" (Tr. 25, 266). In consideration of the social limitations alleged by Plaintiff during the consultative examination, the ALJ limited him to work involving only occasional interaction with coworkers, supervisors, and the public (Tr. 25).

Plaintiff also takes issue with the ALJ's adoption of Dr. Morrow's July, 2016 non-examining conclusion that he could perform simple, unskilled work (Tr. 26 citing 79-82). *Plaintiff's Brief* at *19*. He points out that Dr. Morrow did not have benefit of McCulloch's September, 2017 IQ testing results. To be sure, "[w]hen an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,'" the courts "require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks v. Commissioner*

*of Social Sec.*, 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(*citing Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))(internal citations and punctuation omitted).

However, the ALJ did more than give "some indication" that she considered McCulloch's findings.  First, she summarized McCulloch's findings, including the full scale IQ of 55 then later, as discussed above, addressed McCulloch's finding that Plaintiff met Listing 12.05 and her reasons for its rejection (Tr. 24-25).  Further, while Plaintiff argues that McCulloch's records, if reviewed by Dr. Morrow, could have changed her non-disability opinion, none of the records created between July, 2016 and September, 2017 suggest that Plaintiff's mental functioning deteriorated between the time of Dr. Hasan's June, 2016 findings and the September, 2017 testing (Tr. 361, 365, 418).  While Plaintiff notes that Dr. Hasan's evaluation did not include IQ testing, substantial evidence nonetheless supports the finding that Plaintiff did not experience marked or extreme functional limitation.  While Dr. Morrow did not review McCulloch's findings, the ALJ did.  Because the ALJ discussed her reasons for accepting and rejecting the various findings, it is not for this Court to re-weigh her conclusions. "The 'substantial evidence' standard, according to which a district court reviews decisions by the Commissioner, does not permit the court to resolve conflicts in evidence." *DeLong v. Commissioner of Social Sec.*, 748 F.3d 723, 726 (6th Cir. 2014).

## B.  The Physical RFC

Plaintiff also argues that the ALJ's conclusion that he could perform exertionally light work is unsupported by any medical opinion.  *Plaintiff's Brief* at 20-22.  He contends that the ALJ improperly made a non-medical interpretation of the "raw medical data" in crafting the RFC for light work.  *Id.*

Plaintiff's argument does not provide grounds for remand.  First, the record contains a medical opinion.  The ALJ noted that in May, 2016, Dr. Mahmoud concluded that none of the physical conditions created significant work-related limitations (Tr. 78).  Second, the ALJ discounted Dr. Mahmoud's findings, accurately noting that the treating medical evidence showed that Plaintiff experienced some degree of physical limitation due to lumbar and cervical spondylosis, arthritis of both knees, and obesity (Tr. 26).  Third, the RFC composed by the ALJ limits Plaintiff to light work *further limited to* occasional stooping, crouching, and climbing of stairs/ramps and a preclusion on kneeling, crawling, balancing, use of hazardous machinery, and use of ladders or scaffolds (Tr. 21).

Finally, substantial evidence supports the finding that Plaintiff was capable of exertionally light work.  The ALJ noted that while Plaintiff received treatment for neck and lumbar pain, he did not exhibit neurological symptoms (Tr. 23).  She noted that he exhibited full muscle strength and good coordination (Tr. 23).  My own review of the medical records shows that Plaintiff consistently demonstrated full strength in all muscle groups, a full range of motion and good muscle tone (Tr. 237, 252, 313, 349, 399, 419, 544).  The ALJ also cited

that Plaintiff's testimony that he helped his mother take care of personal care, traveled by bus by himself, did laundry, shopped, and cooked (Tr. 26).  The fact that none of the medical sources made a light work finding does undermine the ALJ's conclusion.  "[T]he Commissioner has final responsibility for deciding an individual's RFC [and] to require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'" *Rudd v. Commissioner of Social Sec*., 531 Fed.Appx. 719, 728 (September 5, 2013)(citing SSR 96–5p, 1996 WL 374183 (July 2, 1996).  As such, the ALJ's finding that he could perform a limited range of light work should remain undisturbed.

## D.  Plaintiff's Subjective Complaints

For overlapping reasons, Plaintiff claim that his subjective complaints were not properly evaluated does not provide grounds for remand.  *Plaintiff's Brief* at 23-25.

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process.  2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the alleged pain or limitation. *Id*.  Next, the ALJ evaluates the claims of limitation not reflected in the objective evidence. *Id*. at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about

the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* An ALJ's determination of the weight accorded to the subjective allegations is entitled to deference. *See Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(An ALJ's credibility determination is entitled to "great weight")(*see also Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989))*(citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

The ALJ provided a thorough rationale for declining to accept Plaintiff's professed degree of limitation. She cited August and September, 2016 records showing normal muscle strength, normal coordination, no tenderness, and no edema (Tr. 23). She noted that Plaintiff exhibited a normal gait except for a mildly antalgic gait when attempting to walk with his eyes closed (Tr. 23). She cited the cervical and lumbar injection records showing that the pain was non-radicular (Tr. 23). She noted that treating records post-dating the knee surgery showed steady improvement (Tr. 23-24).

While Plaintiff notes that he takes multiple medications for the back and neck conditions, at the hearing he denied medication side effects and reported only "one" to "two" pain with medication (Tr. 47). Plaintiff now argues, in effect, that his testimony that he engaged in a large number of activities on a regular basis was "flawed" and that the ALJ erred by declining to credit his wife's followup affidavit that his activity was limited to "very

simple things" under her supervision (Tr. (Tr. 221). However, the ALJ permissibly discounted the affidavit by Plaintiff's wife, noting that it conflicted directly with Plaintiff's testimony that he performed a variety household activities and was able to take public transportation by himself (Tr. 26, 41-42). The ALJ reasonably concluded that while Plaintiff's work on behalf of his mother was not full-time work, it undermined his claim that he was unable to perform any gainful employment (Tr. 27). *See Cruse*, *supra,* 502 F.3d at 542–43 ("ALJ may ... consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments")(internal citations omitted). While Plaintiff cites his "chronic pain and dangerous rages" in support of a disability finding, *Plaintiff's Brief* at 24, the treating records, discussed above, repeatedly note an unremarkable affect and cooperative demeanor.

Because the determination that Plaintiff was not disabled is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## VI. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #18] be DENIED and that Defendant's Motion for Summary Judgment [Dock. #20] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 31, 2019

-23-

**CERTIFICATE OF SERVICE**

I hereby certify on August 31 , 2019, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on August 31, 2019.